UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ADAM KATZ, AS ASSIGNEE
OF ELANA CHARTERS LLC,

                       Plaintiff,

    -against-

NAIAD DYNAMICS US, INC.,

                       Defendant.
------------------------------------------------------------------x

Civil Action File No.
2:15-CV-6488-ADS-ARL

**AMENDED
VERIFIED COMPLAINT**

      Plaintiff, Adam Katz, as assignee of Elana Charters LLC, by his attorney John Ramsen, Esq., as and for his amended complaint herein, hereby states as follows:

## THE PARTIES

    1.     Plaintiff, Adam Katz ("Plaintiff") is an individual with a residence located at Marina Bay, 2525 Marina Bay Drive West, Fort Lauderdale, FL 33312 and a residence located at One Hidden Pond Drive, Old Westbury, New York 11568.

    2.     Elana Charters LLC ("Elana") is a foreign limited liability company which assigned its claims related to the within action to Plaintiff pursuant to an assignment of claims dated as of October 1, 2015.

    3.     Upon information and belief, Defendant, Naiad Dynamics US, Inc. ("Defendant") is a foreign corporation, doing business in New York, with its principal place of business located in Connecticut.

## JURISDICTION

4.     This action was commenced by a Summons and Verified Complaint on or about October 13, 2015 in the Supreme Court of the State of New York, County of Nassau (Index No. 606600/2015).

5.     On or about November 12, 2015, defendant filed a petition to remove this action to this Court, pursuant to 28 USC § 1332 and 28 USC § 1333.

6.     Plaintiff does not dispute that diversity exists under 28 USC § 1332(a), that the matter in controversy exceeds $75,000.00 and that this Court has original jurisdiction of the action.

7.     Venue exists in this Court by reason of USC § 1391(b)(2) in that a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Suffolk County, New York.

## FACTUAL BACKGROUND

8.     Elana is the owner of the motor yacht known as SERQUE, an approximately 133-foot custom built motor yacht (the "Vessel").

9.     In June of 2014, the Vessel traveled from Fort Lauderdale, Florida to New York.   While en-route to New York, the Vessel began experiencing trouble with its hydraulic system – namely, there was a lack of system pressure from the main engine driven pumps.

10.     Elana then contacted Defendant regarding the mechanical issues the Vessel was experiencing to see if Defendant was available to assist in the diagnosis and repair of the mechanical issues plaguing the Vessel.

2

11.    Upon information and belief, Defendant informed Elana that it was capable of diagnosing and repairing the mechanical issues on board.

12.    Upon information and belief, as a result of Defendant's representation that it could adequately diagnose the problems and because of the parties' prior relationship history, Elana and Defendant then agreed that Defendant would visit the Vessel in New York where it would diagnose the mechanical issues which the Vessel was experiencing.

13.    During the month of June 2014, Defendant's technicians traveled to New York to diagnose the mechanical issues on board the Vessel. Upon their arrival, Defendant's technicians inspected the Vessel and engaged in troubleshooting the system.

14.    Defendant then represented to Elana that it believed that the engine's existing hydraulic power take-off ("PTO") pumps were defective and needed to either be rebuilt or replaced.

15.    Upon information and belief, at that time, Defendant knew that the PTO pumps were not in fact defective and nonetheless misrepresented to Elana that the PTO pumps were the source of the issues affecting the vessel.

16.    Upon information and belief, given Elana's relationship with Defendant and the highly technical nature of the misrepresentations, Elana reasonably relied on Defendant's misrepresentations regarding the defective PTO pumps.

17.    Defendant then informed Elana that new PTO pumps would take about 4-5 weeks before they would be available, but that rebuilding the old pumps would take even longer. As a result, based on Defendant's recommendations, Elana elected to purchase new PTO pumps from Defendant.

18.     Defendant then ordered two (2) new PTO pumps to be installed on the Vessel which cost Eight Thousand Nine Hundred Fifty Two Dollars and No Cents ($8,952.00) in total.

19.     On or about August 4, 2014, over a month after Defendant had ordered the pumps, Defendant's technician traveled to Montauk, New York, where the Vessel was then located.

20.     Defendant's technician installed the two (2) new PTO pumps on board the Vessel; however, the pumps, which, Defendant had instructed Elana to purchase, were not operational.

21.     Upon information and belief, upon installation, Defendant knew that the two (2) new PTO pumps would not be operational, and nevertheless improperly proceeded to install same.

22.      For the next few days, Defendant's technicians informed Elana that it was "troubleshooting" the new pumps, all the while Defendant continued to improperly charge Plaintiff for its labor and time.

23.     Upon information and belief, Defendant did no work of consequence during that three (3) day period, yet charged Elana for considerable labor and services.

24.     On or about August 7, 2014, Defendant recommended that it have the brand new pumps removed, that it take them to be bench-tested and that it plan another visit to the Vessel in Montauk.

25.     Upon information and belief, Defendant knew that a removal of the pumps would have no effect upon the condition of the Vessel as those pumps were not the

4

source of the issues affecting the Vessel. Nevertheless, Defendant recommended the unnecessary bench-test.

26.     Upon returning to the Vessel, Defendant performed additional testing and for the first time opined that they believed the cause of the mechanical issues was due to the routing of the hydraulic system oil suction lines, and Defendant said the required repair was to replace the hard piping with a hose.

27.     Upon information and belief, at that time, Defendant knew that that there was no problem with the hydraulic system oil suction line when it made such recommendation to Defendant.  Given the technical nature of the issue and Elana's relationship with Defendant, however, Elana reasonably relied on this improper misrepresentation.

28.     Accordingly, at Defendant's recommendation, Elana ordered the parts which Defendant misrepresented were required to perform the work.  However, and for a reason unbeknownst to Elana, Defendant also purchased the same parts, resulting in Elana unnecessarily having and paying for two (2) sets of the same parts.

29.     Upon information and belief Defendant thereafter came back on board the Vessel to re-inspect, and after several additional rounds of testing on the hydraulic system, it was revealed that all four (4) PTO pumps were in good working order (a fact of which upon information and belief, Defendant was well aware) – thereby confirming that not only was the hydraulic system oil suction lines not the problem, but that the old pumps were not defective to begin with.

30.     Despite Defendant's time consuming, unnecessary  and costly efforts, it was ultimately the Vessel's shipboard engineers and additional third-party vendors who

determined that the mechanical issues the Vessel had been experiencing did not originate in the hydraulic pumps or with the hydraulic system oil suction lines as had been represented by Defendant, but instead, the mechanical issues actually originated in the coupling that connects the spline on the PTO pump and the gears within the engine.

31.     Upon information and belief, the necessary repair for this issue was a simple fix, which simply required the purchase and replacement of one  part on each of the PTO pumps at a cost of a mere Two Dollars ($2.00), making it clear that the $29,321.70 which Defendant charged and collected from Elana was not only excessive, but completely unwarranted.

32.     Upon information and belief, Defendant knew full well that the mechanical issue was a minor one and knowingly misdiagnosed the problem so as to charge Elana for wholly unnecessary services and parts.

33.     In sum, Defendant provided inept services and charged Elana for unnecessary and in some cases duplicative parts, faulty workmanship and unnecessary travel and labor expenses that did nothing to repair the mechanical problems aboard the Vessel.

34.     Due to Defendant's misdiagnosis of the subject issues aboard the Vessel and Elana's purchase of several unnecessary and expensive parts, Elana subsequently contacted Defendant and requested that it purchase back the new PTO pumps from Elana and that it reimburse Elana for the unnecessary expenses which Elana was charged throughout their contractual relationship, but Defendant has refused.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

35.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-34 as if fully set forth herein.

36.     There was an express contract between Defendant and Elana.

37.     Defendant breached its agreement with Elana by failing to provide the agreed-upon services on the Vessel, as described more fully above.

38.     Elana has been damaged by Defendant's breach of the parties' contract in that, among other things: (a) Elana paid for unnecessary equipment; (b) Elana paid for services performed by Defendant which had no value; (c) Elana paid for unnecessary travel related expenses for Defendant's employees; (d) Elana incurred additional costs to accurately diagnose and repair the actual problems plaguing the Vessel; and (e) the Vessel was not in its optimal condition for a delayed and unnecessary period of time.

39.     Elana's damages will be determined at trial but, upon information and belief, will be at least $500,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Unjust Enrichment)

40.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-39 has if fully set forth herein.

41.     As set forth in detail above, Defendant billed, and Elana paid, $29,321.70 to Defendant for services unnecessarily rendered and for equipment which Defendant recommended and which was ultimately unnecessarily purchased; Defendant did nothing to earn the monies it collected.

42.     Accordingly, in the event that this Court determines that no express contract between the parties existed, Defendant has been unjustly enriched by reason of Elana's payment to Defendant in the amount of $29,321.70.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligence)

43.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-42 as if fully set forth herein.

44.     At all times Defendant owed Elana a duty to provide services in a workmanlike and professional manner.

45.     Upon information and belief, Defendant disregarded such duty and instead inaccurately diagnosed the mechanical problems plaguing the Vessel and billed Elana for wholly unnecessary services and parts.

46.     Upon information and belief Defendant failed to properly assess the true problem with the Vessel's hydraulic system over the course of some four (4) months.

47.     As a direct and proximate result of Defendant's negligence, Elana has been damaged in an amount to be determined at trial, but upon information and belief, will be at least $500,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

48.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-47 as if fully set forth herein.

49.     Elana hired Defendant to provide diagnostic and repair services with respect to a mechanical problem on board the Vessel, something which Defendant represented it was capable of doing.

8

50. Instead of accurately diagnosing the problems, Defendant misrepresented the nature of the problems with the mechanical issues and Defendant misrepresented the remedies for such problems.

51. Among these misrepresentations were the following material facts, which upon information and belief, Defendant knew to be false at the time they were made and which were meant to induce Elana's reliance:

   a. That the Defendant had the requisite skills, experience and qualifications to properly diagnose and repair the hydraulic system issues plaguing the Vessel;

   b. That the hydraulic system issues stemmed from the PTO pumps;

   c. That the existing PTO pumps needed to be rebuilt or replaced;

   d. That the new PTO pumps would remedy the hydraulic system issues plaguing the Vessel;

   e. That the hydraulic system issues were due to the routing of the hydraulic system oil suction line and that the necessary repair was to replace the hard piping with a hose;

   f. That the Vessel needed a new hose and related parts to carry out the repair stated in (e) above; and

   g. That the new hose would remedy the hydraulic system issues plaguing the Vessel.

52. In light of their prior relationship with Defendant, and given the highly technical nature of the mechanical issues with the Vessel, Elana reasonably relied on Defendant's representations.

53. As a direct and proximate result of Defendant's material misrepresentations, Elana has been damaged in an amount to be determined at trial, but upon information and belief, will be at least $500,000.00.

**WHEREFORE**, Plaintiff, Adam Katz, as assignee of Elana Charters LLC, respectfully requests that the Court grant the following relief:

(a) on the first cause of action, a money judgment in an amount to be determined at trial, but at least $500,000.00;

(b) on the second cause of action, a money judgment in the amount of $29,321.70;

(c) on the third cause of action, a money judgment in an amount to be determined at trial, but at least $500,000.00, plus punitive damages;

(d) on the fourth cause of action, a money judgment in an amount to be determined at trial, but at least $500,000.00, plus punitive damages; and

(e) for such other and further relief as the Court deems just, proper and equitable.

Dated: Farmingdale, New York
      December 15, 2015

JOHN RAMSEN, ESQ. (JR 3814)
*Attorney for Plaintiff*
8300 Republic Airport, Suite 200
Farmingdale, New York 11735
(516) 466-6680, Ext. 109
johnr@roxann.com

**TO:**    Rubin, Fiorella & Friedman LLP
        Michael E. Stern, Esq.
        *Counsel for Defendant*
        630 Third Avenue, 3rd Floor
        New York, New York 10017
        Tel. No. (212) 953-2381
        Mstern@RubinFiorella.com

## VERIFICATION

STATE OF NEW YORK      )
                                    ) ss.:
COUNTY OF SUFFOLK      )

         Adam Katz, being duly sworn, deposes and says:

         I am the Plaintiff in the above captioned action. I have read the foregoing Amended Verified Complaint and know the contents thereof; that the same are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                     _____
                                      Adam Katz

Sworn to before me this
15th day of December, 2015

Notary Public

         **SHERI SHULMAN**
       **Notary Public, State of New York**
           **No. 01SH4639363**
         **Qualified in Nassau County**
   **Commission Expires December 31** 2018